**STATE of Minnesota, Respondent,**

v.

**Allen Dale HANSON, Appellant.**

No. 49384.

Supreme Court of Minnesota.

Nov. 2, 1979.

C. Paul Jones, Public Defender, and Michael F. Cromett, Asst. Public Defender, Minneapolis, for appellant.

**488**

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Thomas F. Fabel, Deputy Atty. Gen., David McKenna, Sp. Asst. Atty. Gen., St. Paul, Michael L. Kirk, County Atty., Otter Tail County, Fergus Falls, for respondent.

TODD, Justice.

During 1975, on two separate occasions, Allen Hanson ran newspaper ads soliciting wheat and corn sales. In each case, the price offered was substantially over market, but the ad did provide for a 1-year call period. Persons who responded were told that a 10-cent per bushel administrative fee would be charged before any contracts were signed. Hanson collected over $2,500 from farmers in Minnesota and surrounding states. No purchases were ever made, and there was no refund of the fee. Hanson was convicted of theft of over $2,500 by swindle. We affirm.

In the fall of 1973, Hanson formed a Minnesota nonprofit corporation called Guarantee Grain Corporation to promote grain farming. In the spring of 1975, he formed a Delaware business corporation called Guarantee Grain Corporation. In the interval between the formation of the corporations, he transferred his homestead and a business property to his daughter.

In the spring of 1975, Hanson caused Guarantee to place an ad in the Fargo, North Dakota, paper soliciting spring wheat purchases. The ad proposed a "Special Contract with Special Terms" for "245,000 bushels, strictly limited to Above Quantities, on First Come Basis" for $4.35 per bushel. This price was 60 cents a bushel over the then cash price and 90 cents a bushel over the September futures price.

Farmers who contacted Guarantee were advised that there would be a 10-cent per bushel administrative fee charged before any contract would be signed. Interested farmers received a mail packet containing contract information, and those who for-warded the fee received contracts to sign. Guarantee received individual checks in amounts between $250 and $1,000 and collected total funds in excess of $2,500. The terms of the contract provided that Guarantee could call for the wheat between September 30, 1975, and September 30, 1976. Several farmers in Otter Tail County, Minnesota, executed such contracts and paid the administrative fee. In order for Guarantee to have made a profit on these transactions, factoring in transportation costs, the market would have had to reach $5 per bushel. The market never achieved the $5 price, Guarantee never called any of the contracts, and the administrative fee was not refunded.

In June 1975, Hanson caused Guarantee to place an ad in the Minneapolis Tribune soliciting the purchase of 180,000 bushels of corn at a price of $3.35 per bushel. This price was 50 cents to $1 higher than the cash and futures prices. The same procedures were followed as in the wheat transactions. Again, the market never approached a figure which would make the transaction feasible, and there was no call by Guarantee or refund of administrative fee.

On July 2, 1979, an investigator for the Minnesota Attorney General's office questioned the defendant about the corn contract. Defendant told the investigator that he had seats on the grain exchange; that he had been successful in such a deal before; that he would make his profit through transportation savings; and that he intended to resell the corn contracts to other unnamed individuals. Defendant also stated that Guarantee Grain Corporation had no corporate bank account. The investigator conducted this investigation because he was concerned about the high pressure tactics of the ad.

On July 10 and August 14, 1975, the Minnesota Attorney General requested that the defendant answer interrogatories about possible fraudulent dealings in corn and wheat contracts. Defendant falsely responded to the interrogatories that he had no list of farmers responding to the grain

offers and that no Minnesota residents had contracted with him. He also stated that Guarantee Grain Corporation had no assets except for the contracts themselves.

In January 1978, Hanson was charged in Otter Tail County, Minnesota, with theft of over $2,500 by swindle. He waived a jury trial and was found guilty by the trial judge. During the course of the trial, evidence of the transfer of the homestead and business property was admitted. Hanson did not testify but offered evidence which characterized the grain contracts as unique because they provided a futures contract with a 1-year call period. Hanson's defense attempted to show that he was not a criminal, but only a bad businessman.

The issues presented are:

(1) Was defendant denied due process by a 15-month delay in filing of the criminal complaint?

(2) Did the trial court violate defendant's Fifth Amendment privileges by admitting his answers to interrogatories into evidence?

(3) Did the trial court err in admitting evidence regarding transfers of defendant's property?

(4) Was the evidence sufficient to show criminal intent?

(5) Is the statutory authority of the prosecutor to aggregate separate offenses into a single offense overbroad?

(6) Can a criminal defendant be tried in a county where some, but not all, of the offenses occurred?

■ 1. Hanson was not charged until 15 months after the end of the contract period. Under the test announced in *United States v. Marion*, 404 U.S. 307, 324–26, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), Hanson could succeed in his due process claim of delay in bringing the grain contract complaint if he proves (1) the delay actually prejudiced him, and (2) the delay was used by the prosecution to gain tactical advantage at trial.

Hanson engaged in a jeep sales swindle during the 15-month interval, a complaint was issued, and he was adjudged guilty. Theoretically, an argument could be framed as to the first of the *Marion* tests, but we do not reach it since the evidence discloses that the second test is not met. The only facts on the record indicate that the state could not have brought the grain contracts complaint before the jeep sales complaint. The Minnesota Attorney General's investigation in 1975 revealed no wrongdoing by Hanson because he had given false exculpatory responses to the interrogatories. Thus, there was no basis upon which to charge him until an injured farmer requested an investigation. The farmer's request did not come to the Otter Tail County deputy sheriff until October 1977 (after the jeep sales complaint had been issued). The deputy sheriff took reasonable steps to investigate the contracts. Within 3 months of the farmer's request, the grain contracts complaint was issued. This constitutes reasonably prompt action and reveals no intent by the government to prejudice defendant.

Although the government could have re-investigated the grain sales in September 1976, after the contract period ended, there seems to be no reason to put this burden on the government. All of Hanson's answers had been exculpatory, and the government does not have the resources to reinvestigate every consumer contract which it feels worthy of an initial investigation.

■ 2. The general rule is that a defendant must claim a Fifth Amendment privilege in lieu of answering questions, or the privilege is waived. *Garner v. United States*, 424 U.S. 648, 656, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). Despite Hanson's failure to assert a Fifth Amendment claim in his answers to the interrogatories, however, he attempted to claim the privilege at trial. He based his claim on the "gambler" cases, *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

Hanson was not situated like a gambler who was coerced into answering wagering tax questions when the attorney general put the interrogatories to him. The gam-

bler cases proclaimed the gambler's right to remain silent and anonymous when the government would seek to impose criminal regulation upon the gambler if he revealed himself. *Marchetti v. United States,* 390 U.S. at 52, 88 S.Ct. 697; *Grosso v. United States,* 390 U.S. at 75–76, 88 S.Ct. 709 (Brennan, J., concurring). Hanson was not anonymous nor did he seek to remain silent. The attorney general sent the interrogatories to the defendant by name. The defendant answered them. In this situation the defendant is bound by the general rule regarding Fifth Amendment waivers. Since he did not assert his privilege in lieu of answering questions, he has waived his privilege.

■ 3. We find no merit in Hanson's claim of error as to the receipt into evidence of the property transfer. The transfers are arguably relevant because they did occur between the formation of the two corporations. The evidence was inconsequential, however, so any claim of prejudice is negligible.

■ 4. Examination of the record discloses more than adequate evidence to sustain a finding of criminal intent beyond a reasonable doubt. We, therefore, reject Hanson's allegation of error on this issue.

5. We have disposed of the venue issue in affirming Hanson's conviction in the jeep sales promotion case filed contemporaneously with this decision.

6. We have also disposed of the aggregation issue in the jeep sales case.

Affirmed.