**In the Matter of the ESTATE OF Alice M. STOLLMEYER, deceased, Respondent,**

**v.**

**George M. MAY, Sr., Appellant.**

No. CX–97–2170.

Court of Appeals of Minnesota.

June 16, 1998.

Christopher A. Grove, Severson, Sheldon, Dougherty & Molenda, P.A., Apple Valley, for respondent.

Steven L. Theesfeld, Daniel W. Boerigter, Yost & Baill, LLP, Minneapolis, for appellant.

Considered and decided by WILLIS, P.J., and RANDALL and KLAPHAKE, JJ.

## OPINION

RANDALL, Judge.

Appellant challenges the district court's civil contempt judgment against him, asserting that he properly invoked his Fifth Amendment privilege. We reverse.

## FACTS

Appellant George May is the former executor of the estate of Alice Stollmeyer. May filed a Verified Complaint in Action for Settlement of First and Final Accounts (accounting) for the estate in Middlesex County, New Jersey, which disclosed "various loans outstanding" totaling $150,422.36. The accounting did not contain any additional information about the outstanding loans. Due to irregularities, the New Jersey Superior Court removed May from his position as executor, and the substitute administrator obtained a judgment against May for $218,842.51. The New Jersey judgment was docketed in Minnesota's Washington County District Court. That judgment is not in issue.

On June 12, 1997, May appeared with his attorney for a deposition by respondent's attorney. May invoked his Fifth Amendment right to remain silent and refused to answer any questions relating to the outstanding loans.

On July 11, the Washington County District Court held a hearing on respondent's motion to compel May's attendance at a continued deposition and to compel disclosure of certain information. In an order filed September 24, the district court ruled that May waived his Fifth Amendment right to the matters contained in the estate accounting by filing the accounting. The district court ordered May to appear at the continued deposition and to disclose information related to the materials in the accounting. The court also ordered May to

> identify and provide all information concerning any and all individuals and entities which received loans from the corpus at issue herein, including the indenti[t]y, amount, date, and terms of said loans.

At the continued deposition on October 28, May refused to identify the individuals or entities who received loans from the estate and refused to disclose any information regarding the loans. An order to show cause hearing immediately followed the deposition, and the district court found that May was in constructive civil contempt of court. The district court ordered May to serve 90 days in jail and to pay attorney fees. The district court ruled that May could purge himself of the contempt and attorney fees by complying with the court's order to disclose information. The district court stayed execution of the sentence and fees pending the outcome of this appeal. Judgment was entered on November 25, 1997, and May appealed from this judgment.

## ISSUE

Did the district court abuse its discretion by holding appellant in civil contempt for refusing to answer deposition questions pursuant to a court order that ruled appellant waived his right to invoke any Fifth Amendment privilege as to matters related to the estate accounting?

## ANALYSIS

### I.

■ A reviewing court may reverse or modify a contempt order only if it concludes that the district court abused its discretion by issuing that order. *Minnesota State Bar Ass'n v. Divorce Assistance Ass'n, Inc.*, 311 Minn. 276, 284, 248 N.W.2d 733, 740 (1976). The district court's discretion is limited in "that such sanction is appropriate only where the alleged contemnor has acted contumaciously, in bad faith, and out of disrespect for the judicial process." *Id.*

### II.

■ Although criminal contempt sanctions are imposed as a punishment, civil contempt sanctions are imposed to induce future compliance with a court's order favoring the opposing party. *Minnesota State Bar Ass'n,* 311 Minn. at 285, 248 N.W.2d at 741. The court's function in civil contempt cases "is to make the rights of one individual as against another meaningful. When the duty is performed, the concern of the court is satisfied." *Hopp v. Hopp,* 279 Minn. 170, 174, 156 N.W.2d 212, 216 (1968).

■ Witnesses may invoke their Fifth Amendment right against self-incrimination in civil as well as criminal proceedings. *Parker v. Hennepin County Dist. Court,* 285 N.W.2d 81, 82 (Minn.1979). "[A] witness cannot be cited for contempt for refusing to answer questions on the basis of a valid assertion of the Fifth Amendment privilege * * * ." *Minnesota State Bar Ass'n,* 311 Minn. at 283, 248 N.W.2d at 740. The Fifth Amendment privilege may be invoked if the testimony or information sought would have a tendency to incriminate the witness. *Id.* at 278, 248 N.W.2d at 737. It is the court's role to determine whether the evidence tends to incriminate the witness, but the court should deny this privilege only if it is " *'perfectly clear,* from a careful consideration of all the circumstances in the case, that * * * the answer[s] *cannot possibly* have such tendency to incriminate.'" *Id.* (quoting *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951)). Further, the

witness is only required to demonstrate that testimony or other information "would provide a 'link in the chain of evidence' required for prosecution and that a chance of prosecution exists." *Id.* (quoting *Blau v. United States,* 340 U.S. 159, 161, 71 S.Ct. 223, 224, 95 L.Ed. 170 (1950)).

 The Fifth Amendment does not protect public documents. In *Garner v. United States,* the United States Supreme Court ruled that a defendant who filed his tax returns without asserting his Fifth Amendment rights, could not claim a Fifth Amendment privilege as to them. *Garner v. United States,* 424 U.S. 648, 665, 96 S.Ct. 1178, 1188, 47 L.Ed.2d 370 (1976). Similarly, in *Minnesota State Bar Ass'n,* the Minnesota Supreme Court concluded that a defendant could not use a Fifth Amendment privilege to justify a refusal to produce income tax returns that he had filed without asserting his Fifth Amendment rights. 311 Minn. at 283, 248 N.W.2d at 740.

May asserts that under *Garner,* the district court was first required to determine whether he was compelled to provide the final estate accounting. May insists that because the Supreme Court noted in *Garner* that filing income tax returns is compelled by law, the district court was required to determine whether May was compelled by law to provide the accounting before concluding that May waived his Fifth Amendment privilege.

 *Garner* does conclude that the government compels citizens to file a tax return, just as a witness may be compelled to testify. 424 U.S. at 652, 96 S.Ct. at 1181. The Court stated, however, that the real question was whether the government compelled Garner to incriminate himself in his tax return. *Id.* at 653, 96 S.Ct. at 1181. Despite May's arguments, a witness may waive his right to a Fifth Amendment privilege. *State v. Hanson,* 285 N.W.2d 487, 489 (Minn.1979) (citing *Garner,* 424 U.S. at 656, 96 S.Ct. at 1183); *see also State v. Butzin,* 404 N.W.2d 819, 825–26 (Minn.App.) (noting waiver may be inferred if witness answers questions without hesitation or volunteers information), *review denied* (Minn. June 9, 1987). Here, May submitted the accounting to the New Jersey Superior Court, and he made no attempt to assert his Fifth Amendment rights at that time. There is no support for May's contention that he could not claim a Fifth Amendment right until his deposition. Thus, May waived his right to assert a Fifth Amendment privilege as to the specific contents of the accounting.

 May next argues that even if he did waive his Fifth Amendment right by filing the accounting, he is not required to disclose any more information than what was specifically contained in the accounting. To that we agree.

In both *Garner* and *Minnesota State Bar Ass'n* the defendants were only required to disclose the information they had already given to the IRS (copies of their tax returns). Here, the accounting filed by May simply lists that there are "various loans outstanding," totaling $150,422.36. The district court, however, ordered May to

> identify and provide all information concerning any and all individuals and entities which received loans from the corpus at issue herein, including the indenti[t]y, amount, date, and terms of said loans.

This ordered disclosure goes well beyond the scope of the information provided in the final accounting. May did not waive his Fifth Amendment privilege to this information. The district court erred by finding May in contempt for failing to comply with its previous order to disclose information.

### III.

 Respondent raises two alternative arguments in support of the district court's judgment of contempt. Respondent first insists that the district court's judgment may be upheld because May did not invoke his Fifth Amendment rights out of fear for his own incrimination, but rather, invoked them for the benefit of the loan recipients. Respondent also asserts that the information sought does not incriminate May, and, therefore, May could not properly assert a Fifth Amendment privilege.

Although the district court did not make a specific ruling on either of these issues, it did state in its memorandum attached to its Sep-

tember 24, 1997, order that "under the usual circumstances, Defendant would have a right to invoke his Fifth Amendment rights and refuse to answer questions proposed by Plaintiff." The court also stated that it "concede[d] the possibility that the answers requested by Plaintiff may tend to provide information which would increase the likelihood of a criminal prosecution." Although the court ruled that May waived his Fifth Amendment rights with regard to information related to the accounting he filed, the court concluded that May could claim this privilege as to matters unrelated to this accounting.

In light of the district court's statements in its memorandum, the district court did consider whether the information sought by respondent could incriminate May and determined that it could. The district court decided this issue adversely to respondent; respondent has not filed a notice of review pursuant to Minn. R. Civ.App. P. 106, and we need not review it. *See Arndt v. American Family Ins. Co.,* 394 N.W.2d 791, 793 (1986) (holding respondents could not raise issue decided adverse to their interests because they did not file notice of review).

Even if respondent had raised the issue, there is, easily, sufficient evidence in the record to support a conclusion that May could incriminate himself by making statements regarding the loans he made from estate funds. May was removed as executor of the estate for "irregularities." The estate has a judgment against him for *missing funds* totaling $218,842.51. There is a real possibility he may be subject to criminal charges for the missing funds. The record indicates that May was aware that he might be linked to criminal activity. *See* Minn.Stat. § 609.05 (1996) (stating person is criminally liable for aiding another in committing crime). May stated during his deposition:

I personally do not have the amount in question to turn over back to the estate. If I did, I would have turned it over a long time ago and I would have dealt with these payments. * * *

The reason I'm not going to answer today is I gave my word to them. I told them I was coming here today and what

pressure I was going to be under. Apparently these guys have got some IRS problems of their own, and they—they don't want—they don't want the IRS to know they actually got these funds.

It is possible that May received some benefit from making these loans; it is possible that some or all of the loans were fictional. It is clear there is a possibility that May could be personally incriminated if forced to provide the information in question. That is what the Fifth Amendment is all about.

## DECISION

May did not waive his right to invoke his Fifth Amendment privilege regarding matters outside the final accounting he filed with the New Jersey court. The district court erred by holding May in civil contempt for refusing to comply with the court's order to provide information not contained in the accounting.

**Reversed.**