# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-2639
LT Case No. 2019-CF-048418-A

_____

PAUL JAMES NEWMAN,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____


On appeal from the Circuit Court for Brevard County.
Stephen G. Henderson, Judge.

Matthew J. Metz, Public Defender, and Andrew Mich, Assistant
Public Defender, Daytona Beach, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Marissa V.
Giles, Assistant Attorney General, Daytona Beach, for Appellee.

July 26, 2024


JAY, J.

A jury found Appellant guilty of lewd or lascivious battery. He
seeks a new trial because in his view, a State witness improperly
commented on his right to remain silent. The record shows
otherwise. It also confirms there is no reasonable possibility that
the jury's verdict was influenced by the testimony that Appellant
challenges.

## I.

The victim, a fourteen-year-old female, joined family and friends at a pool party at Appellant's house. After swimming, she left the pool to use the bathroom. As she was washing her hands, she noticed Appellant peering at her through a crack in the door. Appellant pushed the bathroom door open. He kissed the victim, shoved her against the wall, pulled down her shorts, and forced her to have intercourse. When the attack ended, Appellant ran out of the bathroom without speaking. The victim used toilet paper and a towel to clean herself. She put the toilet paper in a wastebasket and the towel in a laundry hamper. When she returned to the pool, she told her mother that she felt poorly and wanted to go home. The family left a few minutes later.

At home later that night, the victim informed her parents and boyfriend about Appellant's actions. Her father called the police. When the police arrived, the victim told them what happened and described where in Appellant's house the toilet paper and towel were located. She then went to the hospital, where she completed a sexual assault kit.

Detective Caswell, who worked for the Palm Bay Police Department's Special Victims Unit, went to Appellant's house. Appellant and his wife invited Detective Caswell inside. Detective Caswell notified them of the victim's allegations and asked Appellant for his version of the events. Appellant and his wife then escorted Detective Caswell to the bathroom and laundry room, where Detective Caswell found the toilet paper and towel in the places that the victim had described.

Detective Caswell asked Appellant if he would provide a buccal swab for DNA testing. Detective Caswell testified that Appellant "was hesitant at first" to agree to this request:

Q [Mr. DeMuro, for the State]: Did you ask [Appellant] for his consent to – for you to obtain a buccal swab from him?

A [Detective Caswell]: Yes, sir.

2

Q: And a buccal swab would be DNA, correct?

A: Yes, sir.

Q: Okay. Did he agree to that?

A: Yes, sir.

Q: Okay. Did he initially agree to it?

A: He was hesitant at first, sir.

Defense Counsel raised a speculation objection, which the court overruled. When questioning resumed, Detective Caswell once more indicated that Appellant was hesitant to give a DNA sample. Defense Counsel asked for permission to approach the bench, which the court granted. At the sidebar conference, Defense Counsel argued that Detective Caswell's testimony about Appellant's hesitation was "an improper comment on his right to remain silent." The court disagreed, explaining that while "it would be different" if Appellant "didn't consent," his agreement to provide the DNA sample made Defense Counsel's argument "a moot point."

Detective Caswell submitted the toilet paper, towel, buccal swab, and sexual assault kit to the Florida Department of Law Enforcement for analysis. That analysis indicated the presence of Appellant's DNA inside the victim's vagina and found that it was 700 billion times more likely that Appellant was the DNA contributor rather than some other person.

In his trial testimony, Appellant denied having sex with the victim. He was thirty-four years old on the date of the pool party. He knew that the victim was fourteen.

The jury found Appellant guilty as charged, and the court sentenced him to fifteen years in prison. As he did at trial, Appellant argues on appeal that the court should not have allowed Detective Caswell to testify that Appellant hesitated before providing a DNA sample. He maintains that this testimony was an

improper comment on his right to remain silent, which warrants a new trial.

## II.

"A trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard of review, but the court's discretion is limited by the rules of evidence and the applicable case law." *Poole v. State*, 284 So. 3d 604, 607 (Fla. 5th DCA 2019) (quoting *Horwitz v. State*, 189 So. 3d 800, 802 (Fla. 4th DCA 2015)).

## A.

"The privilege against self-incrimination 'is an exception to the general principle that the Government has the right to everyone's testimony.'" *Salinas v. Texas*, 570 U.S. 178, 183 (2013) (quoting *Garner v. United States*, 424 U.S. 648, 658 n.11 (1976)). It "is given effect through a person's right to remain silent" when facing police questioning, *Joe v. State*, 66 So. 3d 423, 425 (Fla. 4th DCA 2011), and "guarantees that no penalty will follow from remaining silent." *McRoberts v. State*, 333 So. 3d 240, 242 (Fla. 4th DCA 2022). The State violates this privilege when, at trial, it cites a defendant's pre-arrest, pre-*Miranda*[1] silence as substantive evidence of his consciousness of guilt. *State v. Horwitz*, 191 So. 3d 429, 442 (Fla. 2016).

However, the privilege does not apply when a witness voluntarily cooperates with police inquiries. *See Salinas*, 570 U.S. at 185–86. "Voluntary statements 'remain a proper element in law enforcement.'" *Oregon v. Elstad*, 470 U.S. 298, 305 (1985) (quoting *Miranda*, 384 U.S. at 478). "Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable," and the privilege will not protect "even the most damning [of voluntary] admissions." *Id.* (quoting *United States v. Washington*, 431 U.S. 181, 187 (1977)).

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

B.

The problem with Appellant's "right to remain silent" claim is that he chose not to remain silent. *See O'Brien v. State*, 367 So. 3d 528, 535 (Fla. 4th DCA 2023) (agreeing that a prosecutor did not improperly comment on a defendant's right to remain silent since the defendant "did not actually remain silent"). Instead, he agreed to supply a DNA sample while in a voluntary conversation with a detective whom he invited into his home.

In this respect, *Salinas* is instructive. There, two victims were shot to death. *Salinas*, 570 U.S. at 181. Police found shotgun shell casings at the scene, and their subsequent investigation led them to Mr. Salinas. *Id.* Officers visited him at his home. *Id.* at 182. "He agreed to hand over his shotgun for ballistics testing and to accompany police to the station for questioning." *Id.* In the noncustodial interview that ensued, Mr. Salinas answered the investigating officer's questions. *Id.* But when the officer asked Mr. Salinas if his shotgun would match the shell casings from the scene of the murders, he declined to answer. *Id.* He "[l]ooked down at the floor, shuffled his feet, bit his bottom lip, cl[e]nched his hands in his lap, [and] began to tighten up." *Id.* (alterations in original). "After a few moments of silence," the officer asked more questions, which Mr. Salinas answered. *Id.*

When Mr. Salinas was later tried for the murders, the prosecution cited "his reaction to the officer's question" about the shotgun "as evidence of his guilt." *Id.* The jury found him guilty. *Id.* On appeal, he claimed that the prosecution violated his privilege against self-incrimination. *Id.* In Justice Alito's plurality opinion, the self-incrimination argument was soundly rejected. *Id.* at 183. While a "witness need not expressly invoke the privilege where some form of official compulsion denies him 'a free choice to admit, to deny, or to refuse to answer,'" the court found that Mr. Salinas could not "benefit from th[is] principle because it [was] undisputed that his interview with police was voluntary." *Id.* at 185 (quoting *Garner*, 424 U.S. at 657). Mr. Salinas "agreed to accompany the officers to the station and 'was free to leave at any time[.]'" *Id.* "That place[d] [Mr. Salinas's] situation outside the scope of *Miranda* and other cases in which [the Court] held that various forms of governmental coercion prevented defendants from

5

voluntarily invoking the privilege." *Id.*

Like Mr. Salinas, Appellant "voluntarily answered the questions of a police officer who was investigating" a crime. *See id.* at 181. He did so "[w]ithout being placed in custody" or otherwise facing "some form of official compulsion." *See id.* at 181, 185. While he may have initially "balked" in response to one question—in the context of consenting to the buccal swab—that did not transform his willing cooperation with Detective Caswell into the exercise of his right to remain silent. *See id.* at 181.

Appellant's case is also like *State v. Johnson,* 157 P.3d 198 (Or. 2007). There, an officer testified that the defendant "hesitated" before answering certain questions. *Id.* at 204. The defendant argued that this testimony infringed on his right to remain silent. The Supreme Court of Oregon did not buy that claim:

> One difficulty with defendant's argument is the factual premise that underlies it. The officer did not testify at trial that defendant remained silent in response to his questions. Rather, he testified that defendant hesitated and then answered. The officer told the jury that defendant "would be non-responsive to some statements and questions, so I'd have to repeat them to get him to respond to me." The officer went on and set out defendant's responses to his questions—responses in which defendant denied any knowledge of the events to which the officer referred. Far from testifying that defendant remained silent in the face of questions, the officer testified only that defendant paused before responding.
>
> . . . [B]ecause the officer did not testify that defendant remained silent in response to his questions, his testimony was not a comment on defendant's silence, much less a comment on defendant's exercise of his constitutional right to remain silent.

*Id.* at 204–05 (footnote omitted).

This reasoning is sound, as it captures the obvious truth that hesitating before speaking is not the same as staying quiet. *See McRoberts*, 333 So. 3d at 242 ("The privilege against self-incrimination guarantees that no penalty will follow *from remaining silent*." (emphasis added)). Having freely decided to cooperate with Detective Caswell's investigation—including the request for a DNA swab—Appellant cannot sanitize that decision by trying to assert *ex post facto* his privilege against self-incrimination.[2]

## C.

Even if Appellant could show a constitutional violation, it would still not entitle him to the new trial he seeks. "Comments on a defendant's silence are one class of errors subject to the harmless error analysis." *Davis v. State*, 347 So. 3d 315, 323 (Fla. 2022). An error is harmless when "there is no reasonable possibility" that it "contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).

Appellant makes much of Detective Caswell's brief comments about Appellant's initial hesitancy to give a DNA sample. The far more pressing problem for Appellant was what his DNA sample ultimately revealed, which was the presence of his DNA—consistent with semen—inside a fourteen-year-old victim. Had the court sustained Appellant's objection to the hesitancy comments, there is no reasonable possibility that the jury would have reached a different verdict. *See Jackson v. State*, 301 So. 3d 477, 480 (Fla. 1st DCA 2020) (holding that while it was error to allow a witness

---

[2] *See also Braddy v. State*, 111 So. 3d 810, 840 (Fla. 2012) ("Braddy challenges the State's comment describing Braddy's hesitation before he signed the form consenting to let police search the Town Car. Braddy . . . claims that it constitutes an improper comment on his decision to exercise his Fourth Amendment right to be free from unreasonable searches and seizures. Braddy's argument is contradicted by the evidence, which shows that Braddy did in fact consent to the search. The challenged comment merely recounted evidence relevant to the context of that consent. It was not improper.").

to testify that she found a fifteen-year-old victim of lewd and lascivious battery to be credible based on demeanor, the error was harmless in a case where the defendant's semen was "found in the crotch area" of the victim's clothing).

## III.

Appellant's pursuit of a new trial rests on a constitutional privilege that the State did not violate. And even if the State had done so in the manner Appellant claims, it would not have changed the outcome of this case. Having failed to identify a reason to disturb the jury's conclusion that he is guilty of the lewd or lascivious battery of the victim, Appellant is not entitled to a new trial.

AFFIRMED.

EDWARDS, C.J., and MACIVER, J., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————