Charles Mark **TUFFIASH**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–96–00481–CR.

Court of Appeals of Texas, San Antonio.

May 21, 1997.

---

John M. Economidy, Law Office of John M. Economidy, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before HARDBERGER, C.J., and LOPEZ and ANGELINI, JJ.

**OPINION**

ANGELINI, Justice.

This is an appeal from a murder conviction. In three points of error, appellant contends that the trial court erred (1) in denying appellant's motion to suppress; (2) in allowing appellant's trial counsel to withdraw; and (3) in denying appellant's motion for new trial. We affirm.

### Factual and Procedural Background

On February 28, 1990, Dr. Charles Tuffiash was arrested for the murder of his ex-wife, Susan. At approximately 10:30 a.m., Tuffiash's neighbor, Renna Burke, called the police to report that Tuffiash had arrived at her home with an injured hand and had collapsed on her floor in hysterics. After the police arrived, one of Tuffiash's relatives from Pennsylvania called the Burke home and informed one of the officers that Tuffiash had recently called her and said that Susan had cut his hand with a knife and he had hit Susan in the head with a hammer. Tuffiash was still hysterical when questioned about the fight and could offer the officers no assistance. After Tuffiash was taken by ambulance to the hospital, the officers began to look for Susan, fearing that she had been hit in the head with a hammer.

A lengthy search led them to Susan's boyfriend, Carl Glenn. Glenn informed the officers that Susan had had a meeting scheduled with Tuffiash between 10:00 and 10:30 that morning. She had planned to meet Tuffiash at his dental office in order to exchange family photos. Glenn stated that Susan had not returned from the meeting. At this point, the officers became increasingly concerned about Susan's welfare. They obtained the keys to Tuffiash's office from Renna Burke and traveled to Tuffiash's office. The office was locked and no one answered when the officers knocked. The officers used the keys to enter the office, where they found Susan's savagely brutalized body lying in a pool of blood. A claw hammer and a knife were found next to the body. The officers radioed the dispatcher with instructions to

have an officer arrest Tuffiash at the hospital.

Tuffiash was tried and convicted of murder. The jury assessed punishment at thirty years imprisonment. The case was appealed to this court in cause number 04–91–00698–CR. We abated the appeal and remanded the case to the trial court for an out-of-time motion for new trial based on newly discovered evidence. The evidence in question regarded whether the trial testimony of serologist, Fred Zain, had been perjured. The trial court denied appellant's motion for new trial after both Zain and appellant exercised their Fifth Amendment rights against self-incrimination when called upon to testify at the hearing.

## Arguments on Appeal

### A. Motion to Suppress

In his first point of error, appellant contends that the trial court erred in denying his motion to suppress evidence in which he contested the legality of the warrantless search of his office by the police. Following the presentation of evidence at the hearing on appellant's motion to suppress, the statement of facts indicates that the trial court presented appellant and the state with a draft version of its findings of fact and conclusions of law. There is, however, no such document in the transcript. Based upon the discussion on the record, it appears that the trial court was inclined to deny appellant's motion. However, following appellant's objections, the trial court stated that it would give appellant the opportunity to present further evidence prior to trial. Accordingly, the trial court stated that it would not rule on appellant's motion to suppress until all of the evidence had been received.

Before trial, appellant presented additional evidence in support of his motion to suppress. Immediately after the evidence was presented, the trial began. The record does not indicate that the trial court ever made a final ruling on the motion. There is no written order in the transcript and the statement of facts reveals no oral ruling from the bench. Both appellant and the state concede that the trial court never ruled on appellant's motion to suppress.

In order to preserve appellate review, an accused must obtain a ruling on his motion to suppress. *Calloway v. State,* 743 S.W.2d 645, 650 (Tex.Crim.App.1988). Because appellant failed to obtain a ruling in this case, he has waived his complaint. Further, appellant did not object when the complained of evidence was admitted at trial. Instead, when the evidence was offered for admission, appellant's attorney stated that he had "no objection."

When the accused affirmatively asserts during trial that he has "no objection" to previously challenged evidence, he waives any error in the admission of the evidence. *Moraguez v. State,* 701 S.W.2d 902, 904 (Tex. Crim.App.1986); *Gearing v. State,* 685 S.W.2d 326, 329 (Tex.Crim.App.1985). By failing to obtain a ruling on a motion to suppress and failing to object at trial to the introduction of the offending evidence, an accused presents no error for appellate review. *See Ortiz v. State,* 930 S.W.2d 849, 855 (Tex.App.—Tyler 1996, no pet.); TEX. R. APP. P. 52(a). Accordingly, appellant has waived his complaint regarding the admission of evidence found at his office.

Even if appellant had properly preserved his point of error, we find that the evidence in question was admissible under the emergency search exception to the warrant requirement of the Fourth Amendment. It is generally accepted that "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); *Brimage v. State,* 918 S.W.2d 466, 482 (Tex.Crim.App. 1994). "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey,* 437 U.S. at 392, 98 S.Ct. at 2413.

When the emergency search exception is invoked, the burden of proof is on the state to demonstrate that the warrantless entry was justified by an emergency. *Jani-*

*cek v. State,* 634 S.W.2d 687, 691 (Tex.Crim. App.1982); *Bray v. State,* 597 S.W.2d 763, 765 (Tex.Crim.App.1980). The state must show that the facts and circumstances surrounding the entry and search were such that the officers reasonably believed that an emergency existed which made obtaining a search warrant impracticable. *Brown v. State,* 481 S.W.2d 106, 109 (Tex.Crim.App. 1972). In assessing an officer's belief that a warrantless entry was justified by an emergency, an objective standard of reasonableness is applied. *Janicek,* 634 S.W.2d at 691; *Bray,* 597 S.W.2d at 765. This objective standard of reasonableness used in evaluating police conduct takes into account the facts and circumstances known to the police at the time of the search. *Garcia v. State,* 827 S.W.2d 937, 942–43 (Tex.Crim.App.1992). Once emergency is established, the police may seize any evidence that is in plain view during the course of the activities relating to the emergency. *Michigan v. Tyler,* 436 U.S. 499, 509–10, 98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486 (1978); *Bass v. State,* 732 S.W.2d 632, 636 (Tex.Crim.App.1987).

In the present case, the police observed appellant in a hysterical condition. They received information that appellant had informed a relative that Susan had cut his hand and he had hit her in the head with a hammer. The officers knew that at least a portion of the story was accurate as appellant had a cut hand when the officers found him. Accordingly, the officers had reason to believe that Susan had been recently hit in the head with a hammer. When the officers were unable to locate Susan either at her former place of employment or her home, they were justified in searching for her at appellant's office after learning that she had gone there earlier that morning.

"... [T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey,* 437 U.S. at 392, 98 S.Ct. at 2413. Under the circumstances of this case, the state has satisfied its burden of showing that the officer's entry into appellant's office was a valid emergency entry. Accordingly, all evidence in plain view of the officers once they were inside the office was admissible at trial. Appellant's first point of error is overruled.

## B. Withdrawal of Counsel

In his second point of error, appellant contends that the trial court erred in allowing appellant's counsel to withdraw from his case. Four days before trial was scheduled to begin, appellant's retained counsel filed a motion to withdraw, alleging that appellant had not paid the balance of his retainer fee and that irreconcilable personal and professional conflicts had arisen between himself and appellant.

The trial court held a hearing at which counsel explained that he had been contacted by a local television news reporter. The reporter indicated to counsel that he had been contacted by a friend of appellant's who told him that appellant was unhappy with the manner in which his defense was being conducted and wanted to get in touch with the reporter. The friend gave the reporter appellant's phone number. Counsel argued that such actions seriously compromised appellant's defense in that it waived attorney-client privileges to such a degree that he could no longer control the dissemination of information about the case.

Counsel indicated that appellant was bent on trying the case in the press while he felt that such a practice was detrimental to the defense. Counsel stated that this created an insurmountable conflict between them. Counsel also explained that he had represented defendants for twenty-one years and had only asked to withdraw from a case three times. He assured the court that he could not properly defend appellant because appellant would not "follow [his] instructions and ... had compromised everything [he] had tried to do" in appellant's defense.

Appellant expressed his concerns regarding the delay that his attorney's withdrawal could have on the proceedings. He then stated that he was satisfied with counsel's representation and did not feel that there was a conflict between the two of them. Appellant stated that he believed counsel wanted to withdraw because appellant refused to pay him an extra five thousand

dollars in order to hire a second attorney to assist with the case. The trial court specifically denied the motion to withdraw on the ground that appellant had failed to pay the balance of his retainer fee; however, the court granted the motion on the ground that there was a conflict between counsel and appellant which prevented counsel from fulfilling his ethical duties in representing appellant.

■ It is generally within the discretion of the trial court to determine whether or not trial counsel should be allowed to withdraw from a case. *Green v. State*, 840 S.W.2d 394, 408 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 1020, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993); *Brewer v. State*, 649 S.W.2d 628, 631 (Tex.Crim.App.1983). In the absence of a showing of abuse of discretion, there is no reversible error. *Culverhouse v. State*, 755 S.W.2d 856, 861 (Tex.Crim.App.), *cert. denied*, 488 U.S. 863, 109 S.Ct. 164, 102 L.Ed.2d 134 (1988).

■ The record reflects that appellant did not specifically deny any of counsel's complaints at the hearing on the motion to withdraw. In fact, appellant admitted that his friend contacted the reporter. Appellant also alleged that the reporter called him. This is consistent with counsel's allegations that appellant's friend gave the reporter appellant's number and told the reporter to call appellant. This was a very high profile case, and, as such, counsel's concerns regarding media involvement were justified. Further, appellant's allegations regarding the fact that counsel's primary concern was for money indicated bitterness between appellant and counsel.

In spite of this apparent bitterness, appellant raised concerns of harm in relation to the close proximity of his counsel's withdrawal and the original trial setting. Yet, the record reflects that the trial court took great precautions to protect appellant's rights in this regard. After granting the motion, the trial court appointed appellant's existing investigator to continue in that capacity, appointed a board certified attorney to represent appellant, continued the trial setting for one month, and instructed counsel to make his files available to the new attorney. The trial court also indicated that it would address the matter of an additional continuance or the appointment of a second attorney if those concerns were raised by the newly appointed attorney.

■ Where the complaining party's attorney withdraws from the case, a continuance should be allowed for a reasonable time to allow the party to employ other counsel and to enable the new counsel to investigate the case and adequately prepare for trial or hearing. *Crank v. State*, 658 S.W.2d 182, 184 (Tex.App.—Tyler 1983), *rev'd on other grounds*, 666 S.W.2d 91 (Tex.1984). The record reflects that the trial court complied with such procedure in this case. The record further reflects that the case was eventually continued another three months on the state's motion and that, two months after counsel was appointed, appellant retained a different attorney who represented him at trial. Accordingly, appellant received four months of additional time to prepare for trial following his counsel's withdrawal, and he was represented at trial by the counsel of his choice. Under these circumstances, the trial court did not abuse its discretion in allowing appellant's counsel to withdraw. Appellant's second point of error is overruled.

## C. Motion for New Trial

In his third point of error, appellant contends that the trial court erred in denying his motion for new trial. During trial, serologist, Fred Zain, testified regarding serological tests he performed on items of evidence found at the scene of Susan's murder. Zain's testimony was particularly harmful to appellant in that it negated his self defense theory by demonstrating that appellant's blood was not on the knife appellant claimed Susan had used to stab him. Following this court's order permitting an out-of-time motion for new trial, appellant filed a motion for new trial alleging newly discovered evidence that Zain's trial testimony was perjured.

At the hearing held in response to appellant's motion, Zain was called upon to testify. On the advice of his attorney, he invoked his Fifth Amendment right against self incrimination when questioned by both appellant

and the state. The other evidence introduced at the hearing consisted of the following: (1) a report from the Southwestern Institute of Forensic Sciences which indicates that the knife tested positive for blood, although it does not identify whose blood; (2) a report from the FBI which states that "[Zain] erroneously listed both 'tennis shoes' and 'shoes' when only one of these two items was actually analyzed;" and (3) appellant's testimony that he would not have testified at trial had he not felt compelled to rebut the testimony of Zain.

While on the stand, appellant refused to respond to any questions other than those involving whether Zain's testimony caused him to testify at trial, even after the trial court ordered him to respond. Accordingly, the trial court stated that appellant had "refused to comply with the orders of the court to answer the questions asked by the state," and struck his motion for new trial, "denying it in its entirety."

■ "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX.CODE CRIM. PROC. ANN. art. 40.001 (Vernon Supp.1996). In order to support a motion for new trial, the movant must show: (1) the newly discovered evidence was unknown to the movant at the time of trial; (2) the failure to discover the evidence was not due to his want of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another trial. *Moore v. State,* 882 S.W.2d 844, 849 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995).

■ The granting or denying of a motion for new trial is within the discretion of the trial court. We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable. *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App.1995); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex. Crim.App.1993). Motions for new trial based on newly discovered evidence are not favored by the courts and are viewed with great

caution. *Drew v. State,* 743 S.W.2d 207, 225–26 (Tex.Crim.App.1987). In the present case, appellant contends that Zain's silence at the hearing on the motion for new trial suggest that his testimony at trial was false and constitutes newly discovered material evidence warranting a new trial.

■ A witness can refuse to answer any question that will subject him to criminal liability. *Porchia v. State,* 904 S.W.2d 147, 150 (Tex.App.—Dallas 1995, pet. ref'd)(citing *Garner v. United States,* 424 U.S. 648, 655, 96 S.Ct. 1178, 1182–83, 47 L.Ed.2d 370 (1976)). At the time appellant's motion for new trial was considered, Zain was under several indictments for perjury. As such, the trial court properly permitted the invocation of his Fifth Amendment right. The effect of such invocation is that Zain never took the stand. The purpose of the Fifth Amendment would be thwarted if it was permissible to use a witness's silence as evidence of what his testimony might have been. As such, Zain's silence at the hearing in no way supports appellant's motion for new trial.

■ The other evidence presented at the hearing consisted of appellant's testimony that he would not have testified if Zain had not testified and two documents, one of which was consistent with Zain's trial testimony and one of which indicated a relatively insignificant error in Zain's trial testimony. Neither appellant's testimony nor the documents constitute proof that Zain perjured himself at trial. There is no evidence on the face of this record supporting appellant's allegations that Zain's trial testimony may have been false. Accordingly, the trial court did not err in denying appellant's motion for new trial. Appellant's third point of error is denied.

The judgment of the trial court is affirmed.