Nos. 04-98-00514-CR & 04-98-00515-CR



Ronald Ray BARNES,


Appellant



v.



The STATE of Texas,


Appellee



From the 226th Judicial District Court, Bexar County, Texas


Trial Court Nos. 97-CR-4805 and 97-CR-4806


Honorable James E. Barlow, Judge Presiding



Opinion by: Sarah B. Duncan, Justice


Sitting: Tom Rickhoff, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: August 18, 1999


AFFIRMED

 Ronald Ray Barnes was charged with aggravated robbery with a deadly weapon in two
indictments. The cases were tried together, and a jury found Barnes guilty in each case. The trial
court assessed punishment at twenty-five years imprisonment in each case, to run concurrently. On
appeal, Barnes contends the evidence was legally and factually insufficient and the trial court erred
by failing to hold a separate hearing on his motion to suppress the victims' in-court identifications,
failing to hold a separate punishment hearing, failing to grant his motion for mistrial, and
interrupting counsel while he was making an objection. We affirm.

Sufficiency of the Evidence


 In his second point of error Barnes contends the evidence is legally and factually insufficient
to support the conviction. We disagree.

Standard of Review


 In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable
to the prosecution and determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
In reviewing for factual sufficiency, however, we view all of the evidence "without the prism of 'in
the light most favorable to the prosecution' and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust." Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996) (quoting Stone v. State, 823 S.W.2d 375, 381 (Tex.
App.--Austin 1992, pet. ref'd, untimely filed).

Discussion


 Earl Glosson testified that on May 1, 1997, he was visiting San Antonio, where he had lived
for many years. He spent much of that day at the 19th Hole, a convenience store and gathering place,
where he and old friends talked and played cards and dominoes. Ronald Barnes, whom Glosson did
not know, but recognized from the neighborhood, stopped by the 19th Hole several times during the
day to get a beer, talk to somebody, and then leave. Thelma Nious met Glosson at the 19th Hole at
about 5:30, after she got off work. Nious and Glosson testified they stayed there until about 10:00
p.m., talking with friends. Although people came and went, there were usually about fifteen people
there. Barnes arrived during the evening and started singing to the daughter of one of Glosson's and
Nious' friends. Barnes had a distinctive voice, and both Glosson and Nious noticed it. The girl asked
Barnes to leave her alone, and Barnes later left.

 When Nious and Glosson left the 19th Hole they picked up some chicken and drove to the
motel where Glosson was staying. Nious, who uses a cane, pulled into the handicapped space at the
back of the motel. As Glosson opened his door to get out of the car, a man walked up to him, put a
gun to his head and told him he would kill him if Glosson didn't give him everything he had.
Glosson gave the man his watch, his ring, and his wallet. The man then went around to the driver's
side of the car, put the gun to Nious' temple, took her jewelry and car keys, and ran off. Both Nious
and Glosson testified they saw the man clearly at the time of the robbery, and they identified Barnes
in court as the man who robbed them.

 After the robber fled, Nious and Glosson reported the robbery to the motel manager, who
called the police. They gave the officer a description and said they recognized him as the person who
had been singing to their friend's daughter earlier in the evening. Nious later learned the man's name
was "Ronnie" Barnes, and told police. A police detective prepared a photographic lineup, which was
presented separately to Glosson and Nious. Each picked Barnes without hesitation. This evidence
supports a rational finding, beyond a reasonable doubt, that Barnes robbed Nious and Glosson at
gunpoint. See Jackson, 443 U.S. at 319.

 Barnes argues his alibi evidence created such doubt about his guilt that the jury's decision
is so against the great weight of the evidence to be clearly wrong and unjust. Edith Crocker testified
she was on duty at a Diamond Shamrock across town on the night of May 1, 1997, and that Barnes
was at the store working on his car from about 9:30 to at least 10:45 that night. However, Crocker
also testified she is on extensive medication that causes her to have memory lapses and to get dates
and times confused. Nannette Colberg, Crocker's housemate, testified she went to the Diamond
Shamrock that night to pick Crocker up, mistakenly believing Crocker got off work at 10:00, and
saw Barnes there from 9:30 to 11:30. In rebuttal, the State introduced excerpts of a letter Barnes
wrote the judge in which he said he was at his house the night of May 1, 1997, with three friends,
taking care of his disabled father.

 In conducting a factual sufficiency review, we must be deferential to the jury's assessment
of credibility and we are not free to reweigh the evidence merely because we might reach a different
result. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). In this case, the jury in effect had
to decide whether Glosson and Nious misidentified Barnes or whether Crocker and Colberg were
mistaken about the date or time they had seen Barnes. We do not find the jury's resolution of this
question was so contrary to the great weight of the evidence to be manifestly unjust and we will not
interfere with its decision. See Cain v. State, 976 S.W.2d 228, 234-35 (Tex. App.--San Antonio
1998, no pet.); Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.--El Paso 1996, pet. ref'd); De Los
Santos v. State, 918 S.W.2d 565, 569 (Tex. App.--San Antonio 1996, no pet.). We therefore
overrule Barnes' second point of error.

In-Court Identification


 In his first point of error, Barnes argues reversal is required because the trial court failed to
hold a hearing, outside the presence of the jury, on his motion to suppress Nious' and Glosson's in-court identifications of him. We disagree.

 Although it is advisable, a trial court is not required to hold a hearing on admission of an in-court identification. See Jones v. State, 685 S.W.2d 86, 88 (Tex. App.--Beaumont 1984, no pet.);
Garcia v. State, 649 S.W.2d 70, 71 (Tex. App.--Corpus Christi 1982, no pet.). We review the
court's decision not to hold a pretrial hearing for abuse of discretion. See Calloway v. State, 743
S.W.2d 645, 649-50 (Tex. Crim. App. 1988); Gray v. State, 797 S.W.2d 157, 159 (Tex.
App.--Houston [14th Dist.] 1990, no pet.). To complain on appeal of the court's failure to hold such
a hearing, defendant must object to the identification evidence at trial and the record must show, by
cross-examination, bill of exceptions, or offer of proof, evidence regarding the validity of the
identification. See Gray, 767 S.W.2d at 160; Jones, 685 S.W.2d at 88; Gates v. State, 643 S.W.2d
183, 184 (Tex. App.--Tyler 1982, no pet.).

 Barnes filed a pretrial motion to suppress any in-court identification on the ground that the
photographic lineup was impermissibly suggestive. The judge did not hear or rule on the motion at
the pretrial hearing, instead indicating he would decide the issue when it arose at trial. Thelma Nious
testified she got a good look at the robber when he had his gun pointed at Glosson and, at the State's
request, she identified Barnes as the man she saw. Barnes did not object. He therefore failed to
preserve any error with respect to Nious' in-court identification. See Calloway, 743 S.W.2d at 650;
Tuffiash v. State, 948 S.W.2d 873, 876 (Tex. App.--San Antonio 1997, pet. ref'd) ; Jones, 685
S.W.2d at 88.

 Glosson testified he "got a real good look at" the man who robbed them, and the State asked
if the man was in the courtroom. Barnes' counsel then stated, "I'm going to object on that motion,"
but did not reurge his request for a hearing outside the presence of the jury. The court overruled the
objection and Glosson identified Barnes. Assuming Barnes' objection was sufficient, he has failed
to bring forward a record showing he was harmed.

 Glosson later testified a police officer showed him some photographs, without in any way
suggesting which picture to select. He testified he selected the photograph of Barnes with no
hesitation, he had no doubt in his mind at the time that he picked the right person, and he was equally
positive at trial. Detective Jeff Smith testified a photographic lineup was prepared at his request and
stated the pictures of the individuals in the lineup looked similar, and the subjects were around the
same age and height and the same race. Barnes did not attempt to establish through cross-examination of any of these witnesses or through an offer of proof or bill of exceptions that the
photographic identification was impermissibly suggestive or that it tainted Glosson's in-court
identification of Barnes. We therefore overrule Barnes' first point of error. See Gray, 797 S.W.2d
at 160; Jones, 685 S.W.2d at 88.

Punishment Hearing


 Barnes next complains the trial court erred by failing to provide him a full punishment
hearing. We hold Barnes failed to preserve error.

 After the jury's guilty verdict, the court ordered a presentence investigation and set the matter
for a punishment hearing. At the beginning of the hearing, Barnes' attorney told the court Barnes was
feeling ill and wanted to postpone the hearing. While the judge was discussing possible dates with
counsel, Barnes asked and was granted permission to speak to the court. Barnes told the court he was
not guilty, his witnesses gave him a solid alibi, something was wrong because the police knew the
verdict before he did, the jury was biased, and twenty-five years of his life were at stake. The judge
then tried again, unsuccessfully, to reach agreement with counsel about a date to reset the hearing.
Barnes began speaking again, and the judge asked Barnes who had told him he was going to receive
a twenty-five year sentence. The attorneys explained that at defense counsel's request the State said
that if asked, it would recommend twenty-five years. The judge said that is what he thought "it's
worth" and told Barnes he had a terrible record, with over seventy arrests. Barnes asked to "speak
to those," and the court allowed him to. The judge then indicated his intent to sentence Barnes and
asked counsel if there was anything they wanted to say about why he should not sentence him.
Counsel did not respond, although Barnes continued to argue about his criminal record with the
judge. The court then sentenced Barnes, told him he would be given credit for the time he was in jail,
and advised him of his right to file a motion for new trial and notice of appeal. Barnes again urged
his innocence, his attorney assured him an appeal would be filed, and the proceedings were
adjourned.

 In his motion for new trial Barnes contended the court erred by failing to provide a full
punishment hearing. Counsel testified at the hearing on the motion and stated he did not have other
witnesses to present; however, there was more testimony he wanted to elicit from Barnes and he
wanted to argue a number of points raised in the PSI. No evidence was presented as to the substance
of the testimony and argument Barnes alleges he was precluded from presenting.

 By setting the matter for a punishment hearing, the trial court provided Barnes an opportunity
to present evidence regarding sentencing. At Barnes' request, the court allowed him to speak
(although he was not sworn), and the judge and Barnes engaged in an extended discussion about the
jury's finding of guilt and the matters reflected in the PSI. And counsel had an opportunity, before
the court imposed sentence, to object that he had more evidence to present. By failing to
contemporaneously object, Barnes failed to preserve error. Tex. R. App. P. 33.1; see also Pearson
v. State, 994 S.W.2d 176, 179 (Tex. Crim. App. 1999) (error is preserved by raising it in a motion
for new trial only in those "rare circumstances" when a defendant is "sentenced without being given
an opportunity to present evidence prior to sentencing" and where he "had no opportunity to object
until after the trial court's action was taken"). Moreover, Barnes failed to apprise the court at the
motion for new trial hearing of what additional evidence would have been presented. See Salinas v.
State, 980 S.W.2d 520, 521 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd); Hardeman v. State,
981 S.W.2d 773, 774 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd). We overrule the third point
of error.

Motion for Mistrial


 In his fourth point of error, Barnes contends the court erred by denying him a mistrial. We
disagree.

 Any error in asking an improper question is generally rendered harmless by instructing the
jury to disregard the question. Ransom v. State, 789 S.W.2d 572, 585 (Tex. Crim. App. 1989), cert.
denied, 497 U.S. 1010 (1990). "To cause a reversal the question must be obviously harmful to the
defendant." Gonzales v. State, 685 S.W.2d 47, 49 (Tex. Crim. App.), cert. denied, 472 U.S. 1009
(1985).

 During cross-examination of Edith Crocker, the following exchange occurred:

 State: And are you aware of the fact he's given different accounts of that day?

 Crocker: No, sir, I'm not.

 State: That he's given a sworn statement saying that he was at either place.

Defense counsel objected, "[t]hat's not in evidence." The court sustained the objection, instructed
the jury to disregard, and denied a motion for mistrial. On appeal, Barnes argues he was harmed by
this reference to statements not in evidence because it violated his right not to testify, the statement
referred to was hearsay, and the question was improper impeachment. We disagree. The statement
referred to in the prosecutor's question was later correctly admitted as rebuttal impeachment
evidence, over Barnes' objection that it violated his right against self-incrimination and was hearsay.
Barnes has not shown any harm, and we overrule his fourth point of error.

Interruption of Counsel


 Barnes' final point of error states, "[t]he trial court erred by not allowing trial counsel to
finish his objection and admitting statements by the defendant into evidence." However, Barnes does
not argue the statements should not have been admitted. This point is therefore not properly
presented for our review. See Tex. R. App. P. 38.1(h). Nevertheless, we hold the statements were
properly admitted and Barnes failed to preserve error with respect to the trial court's interruption.

 The statements at issue are excerpts from a notarized letter Barnes sent the trial judge and
filed with the district clerk, in which Barnes claimed to have been at home at the time of the crime.
The statements directly contradicted the testimony of Barnes' alibi witnesses. Before the statements
were admitted, the court held a hearing outside the presence of the jury during which Barnes objected
on the grounds the statements were hearsay and their admission violated his right against self-incrimination. The court ruled them admissible. In the presence of the jury, the person who notarized
the letters identified the letter and authenticated the signature as Barnes'. Before parts of the letter
were read, Barnes' counsel stated, "We renew our objections and --." The court responded, "All
right. It's overruled."

 Barnes' statements were admissible. They were written verbal expressions, made by a party
and offered against that party, and they were not offered for the truth of the matter asserted. See Tex.
R. Evid. 801(a), (d), (e)(2)(A). They were not hearsay. Id. Likewise, admission of the statements did
not violate Barnes' privilege against self-incrimination. The Fifth Amendment privilege protects only
compelled self-incrimination and is not violated unless the testimony is officially coerced. United
States v. Washington, 431 U.S. 181, 187-88 (1977). There is no contention or evidence that Barnes'
letters to the court were anything other than voluntary.

 Barnes also contends "the trial court denied [his] substantial right to have the timely
objections heard without interruption" and he was injured "by having the jury see and hear the trial
judge abruptly interrupt trial counsel" and "[t]he jury could have interpreted this type of behavior
as hostile or disrespectful of trial counsel's skills or case." However, Barnes did not object to the
conduct of the trial court and did not make a proffer or bill of exceptions regarding what else counsel
wanted to say, and thus failed to preserve error. Tex. R. App. P. 33.1, 33.2. We overrule Barnes' fifth
point of error and affirm the judgment.


 Sarah B. Duncan, Justice

Do not publish