CALLAHAN, Circuit Judge, dissenting:
This case is before our en banc panel for a second time after the Supreme Court vacated our prior opinion and remanded for further consideration in light of Salinas v. Texas, — U.S. —, 133 S.Ct. 2174, 186 L.Ed.2d 376 (2013). I concur in Judge Murguia’s dissent. I write separately to stress that I read the Supreme Court’s remand for further consideration in light of Salinas as precluding the majority’s conclusion that Sessoms’s comments were so unambiguous as to render the California Court of Appeal’s opinion unreasonable.
Although Salinas concerned the right to remain silent rather than the right to counsel, Justice Alito’s plurality opinion in Salinas sets forth a controlling perspec *898 tive.[1] He first reiterated that “[t]he privilege against self-incrimination ‘is an exception to the general principle that the Government has the right to everyone’s testimony.’ ” 133 S.Ct. at 2179 (quoting Garner v. United States, 424 U.S. 648, 658 n. 11, 96 S.Ct. 1178, 47 L.Ed.2d 370). He explained that the requirement that the privilege be clearly invoked:
ensures that the Government is put on notice when a witness intends to rely on the privilege so that it may either argue that the testimony sought could not be self-incriminating, see Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), or cure any potential self-incrimination through a grant of immunity, see Kastigar v. United States, 406 U.S. 441, 448, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).
133 S.Ct. at 2179. Justice Alito further elaborated that “[a] witness’ constitutional right to refuse to answer questions depends on his reasons for doing so, and courts need to know those reasons to evaluate the merits of a Fifth Amendment claim.”[2] Id. at 2183.
The application of this perspective to Sessoms’s situation precludes a finding that the California Court of Appeal’s decision was “based on an unreasonable application of, clearly established Federal law.” 28 U.S.C. § 2254(d)(1).
The opinions in Salinas confirm that the Supreme Court had not previously ruled on the degree of certainty required for a pre-Miranda request for counsel. Justice Alito saw Salinas’s unexplained silence in response to the prosecutor’s question as ambiguous. He does not deny that Salinas could have asserted his right against self-incrimination under the Fifth Amendment as his reason for declining to answer. Nor does he deny that if Salinas had invoked his rights under the Fifth Amendment, the prosecutor would have been barred at trial from commenting on Salinas’s silence.
The logic behind the determination that Salinas’s silence was ambiguous leads to the conclusion that Sessoms’s comments concerning counsel were also ambiguous. In both instances the defendants were at police stations. Although Salinas may not have been “in custody,” Sessoms had voluntarily placed himself in custody. In both instances, the officers had legitimate reasons for needing specificity. In Salinas, as noted, the officers could have considered grants of immunity. Similarly, with Sessoms, the officers might have considered grants of immunity and definitely needed to know whether under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), they were required to cease the interrogation even before they gave a Miranda warning.
As a practical matter, Salinas’s reason for not answering the officer’s question *899 was more obvious than Sessoms’s intent. The officer asked Salinas whether his shotgun would match the shells recovered at the scene of the murder. Salinas, 133 S.Ct. at 2178. It is hard to imagine a question that more obviously calls for an incriminating answer. In contrast, as Judge Murguia’s dissent notes, Sessoms’s statements are in themselves ambiguous.[3] In light of the case law cited by Judge Murguia, the California Court of Appeal’s decision that Sessoms’ statements were ambiguous cannot be considered “an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2).
The majority, perhaps seeking to avoid this conclusion, purports to grant relief on the first prong of § 2254(d), holding that the California Court of Appeal “landed on an unreasonable application of clearly established federal law.” Maj. Op. at 896. The State court’s alleged failings were that it “analyzed each statement separately, [and] did not explore the context in which the statements were made.” Id.
The California Court of Appeal’s decision, however, speaks for itself. The court wrote:
“ ‘[A] statement either is such an assertion of the right to counsel or it is not.’ [Citation.] Although a suspect need not ‘speak with the discrimination of an Oxford don,’ [citation], he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect. [Citation.]” (Davis, supra, 512 U.S. at p. 459 [114 S.Ct. 2350].)
In the present case, although defendant twice explicitly referred to an attorney, neither statement was an unequivocal or unambiguous request for counsel. On the first occasion, defendant asked, “There wouldn’t be any possible way that I could have a ... lawyer present while we do this?” As the court found, this was a question, not an unambiguous request. Defendant’s second reference to an attorney was “Yeah, that’s what my dad asked me to ask you guys ... uh, give me a lawyer.”
We find defendant’s first statement is legally indistinguishable from the equivocal remarks in Davis, “ ‘Maybe I should talk to a lawyer’ ” (Davis, supra, 512 U.S. at p. 455 [114 S.Ct. 2350]), and in People v. Crittenden (1994) 9 Cal.4th 83, 123 [36 Cal.Rptr.2d 474, 885 P.2d 887] (Crittenden), “ ‘Did you say I could have a lawyer?’ ” These equivocal remarks in Davis and Crittenden were not requests for counsel triggering the Edwards rule. (Davis, supra, 512 U.S. at p. 462 [114 S.Ct. 2350].) Similarly, “[i]n the present case, defendant did not unequivocally state that he wanted an attorney, but simply asked a question.” (Crittenden, supra, 9 Cal.4th at p. 130 [36 Cal.Rptr.2d 474, 885 P.2d 887].)
Nor was defendant’s second reference to an attorney an unequivocal request for an attorney. At best, it was a statement of his father’s advice to him. ' We cannot find such a statement to be “sufficiently clear[ ] that a reasonable police officer in the circumstances would understand the statement to be a request for an attor *900 ney.” (Davis, supra, 512 U.S. at p. 459 [114 S.Ct. 2350].)
People v. Sessoms, No. C041139, 2004 WL 49720 at *3 (Ca.Ct.App. Jan. 12, 2004) (citations as set forth in the original).
Indeed, the majority opinion appears to reflect a disagreement with the California Court of Appeal’s view of the facts, not its application of clear Federal law.[4] The opinion states: “[t]he only reasonable interpretation of ‘give me a lawyer’ is that Sessoms was asking for a lawyer,” Maj. Op. at 893; “[v]iewed in the context of Sessoms’s prior request that the detectives make counsel available to him during the interrogation, it was unreasonable to hold that Sessoms’s second statement, ‘give me a lawyer,’ was an ambiguous request for counsel,” Maj. Op. at 894; and “[t]here was no ambiguity regarding what Sessoms wanted: a lawyer.” Maj. Op. at 896. These appear to be disagreements with the State court’s view of the facts, not with the application of clear Federal law.
Critically, some of the reasons offered by the majority to support its conclusion were rejected by the Supreme Court in Salinas. The majority asserts that the “detectives understood that Sessoms was requesting counsel,” Maj. Op. at 893; and that the “detectives’ behavior confirms that — like any reasonable law enforcement officers — they understood that Sessoms was requesting counsel.” Maj. Op. at 895. However, the plurality opinion in Salinas noted that the Court had “repeatedly held that the express invocation requirement applies even when an official has reason to suspect that the answer to his question would incriminate the witness.” 133 S.Ct. at 2181. Thus, as in Salinas, whether Sessoms’s statements were ambiguous does not turn on whether the detectives probably understood that Sessoms was requesting counsel.[5]
Furthermore, as Judge Murguia notes in her dissent, the detectives’ reaction was consistent with concerns that Sessoms might be invoking his right to counsel. As Justice Alito explained in Salinas, the Government is entitled to a clear invocation in order that it may consider curing “any potential self-incrimination through a grant of immunity.” 133 S.Ct. at 2179. Here, the detective did not ignore Sessoms statements, but returned to the subject, telling Sessoms “[i]f you said you didn’t want to make any statement without an attorney, we’re not really going to be able to talk to you.” In response, Sessoms did not ask for counsel. Nor is he claiming that he was pressured into an involuntary waiver. Rather, he asserts that his two statements were so clear as to require the immediate cessation of questioning. I do not read the Supreme Court’s opinions in Salinas, or Davis, as directing such a conclusion.
*901 Because Supreme Court precedent does not compel a determination, either as a matter of law or fact, that Sessoms’s statements, either separately or together, constitute an unambiguous invocation of his right to counsel, we are compelled to deny him relief. “A state court’s determination that a claim lacks merit precludes federal habeas relief so long as Tairminded jurists could disagree’ on the correctness of the state court’s decision.” Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). Indeed, recognizing the deference due to the California Court of Appeal’s determination is the most reasonable explanation for why the Supreme Court vacated our prior en banc opinion and remanded the ease for consideration in light of Salinas. I would follow the Supreme Court’s advice rather than challenge it to order our compliance.
MURGUIA, Circuit Judge, with whom KOZINSKI, Chief Judge, and SILVERMAN, CALLAHAN, and IKUTA, Circuit Judges, join, dissenting:
When Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), it severely restricted the power of federal courts to provide relief to habeas petitioners convicted in state court, even when we might believe that the conviction was the result of unlawful proceedings. The statutory provision at issue here, 28 U.S.C. § 2254(d), provides that
[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
Our inquiry falls under § 2254(d)(1); specifically, we must consider whether the California Court of Appeal “unreasonably] appli[ed]” the Supreme Court’s holding in Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Davis held that a suspect “must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney” before the interrogating officers are required to stop questioning the suspect under the Supreme Court’s rule in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[1] Under AEDPA, this inquiry is much narrower than simply evaluating whether the state court correctly applied Davis.
For purposes of § 2254(d)(1), “an unreasonable application of federal law is different from an incorrect application of federal law.” A state court must be granted a deference and latitude that are not in operation when the case involves [direct review].
Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) (quoting Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Indeed, we may only grant habe *902 as relief where “there is no possibility fairminded jurists could disagree that the state court’s decision conflicts with [the Supreme] Court’s precedents.” Id. at 786.
The Supreme Court has recognized that AEDPA, by its intention and design, prohibits us from granting relief in almost all cases in which a petitioner alleges that federal law has been unreasonably applied. See id. “As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.” Id.
Thus, AEDPA has the effect of limiting this court’s consideration of Sessoms’s petition to an excruciatingly narrow question. It does not matter whether we believe that the state court incorrectly applied Davis. It does not matter whether we believe that the state court’s decision was inconsistent with the vital constitutional principle that animated Edwards — that “an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him.” 451 U.S. at 484-85,101 S.Ct. 1880. It does not matter whether the best practice for the officers interrogating Sessoms would have been to ask him to clarify whether he indeed wanted the assistance of counsel. Under AEDPA, the only question that matters to us now is whether any fairminded jurist could determine that Sessoms “ma[de] a reference to an attorney that [was] ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel.” Davis, 512 U.S. at 459, 114 S.Ct. 2350.
I believe that a fairminded jurist could reach such a conclusion. Sessoms first asked, “There wouldn’t be any possible way that I could have a, a lawyer present while we do this?” This question, punctuated with hesitation and conditions and phrased in the negative, is subject to different interpretations and comparable to statements that this court and other courts have found ambiguous. Compare Davis, 512 U.S. at 455, 114 S.Ct. 2350 (“Maybe I should talk to a lawyer.”); United States v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005) (“[B]ut, excuse me, if I am right, I can have a lawyer present through all this, right?”); Clark v. Murphy, 331 F.3d 1062, 1065 (9th Cir.2003) (“I think I would like to talk to a lawyer.”), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); United States v. Doe, 170 F.3d 1162, 1166 (9th Cir.1999) (“What time will I see a lawyer?”); Diaz v. Senkowski, 76 F.3d 61, 63-65 (2d Cir.1996) (“I think I want a lawyer.”); Lord v. Duckworth, 29 F.3d 1216, 1218-21 (7th Cir.1994) (“I can’t afford a lawyer but is there any way I can get one?”); with Anderson v. Terhune, 516 F.3d 781, 783 (9th Cir.2008) (en banc) (“I plead the Fifth.”); Edwards, 451 U.S. at 479, 101 S.Ct. 1880 (“I want an attorney before making a deal.”).
Sessoms followed up his question by stating, “That’s what my dad asked me to ask you guys ... uh, give me a lawyer.” It is unclear if Sessoms was merely expressing his father’s opinion or if he was agreeing with his father and he himself wanted an attorney. Either interpretation is plausible. A reasonable jurist could conclude that telling a detective, “My dad told me to ask for a lawyer” is different than saying, “I want a lawyer.” Because a reasonable jurist could find either of Sessoms’s statements — or both, considered together — ambiguous or equivocal, relief is barred by AEDPA.
The majority points to the detective’s behavior in reaction to Sessoms’s statements as evidence that the detective be *903 lieved Sessoms had invoked his right to counsel. According to the majority, the officer attempted to “talk Sessoms out of an attorney,” which demonstrates that the officer understood Sessoms to have invoked his right to speak with counsel. The detective’s reaction, however, could easily have been that of an officer faced with a suspect who only might have invoked his right to counsel. The detective’s acknowledgment of Sessoms’s statements about speaking to an attorney supports this theory:
Uh, I want to back up to your question you asked about an attorney. Um, first, before you ask questions, uh, I’m going to tell you why we’re here, just lay it out and be up front. And then — then I’m going to advise you of your rights. And then it’s up — for you to decide if you want the attorney or not.
The majority believes the officers should have answered Sessoms’s question by simply saying “yes,” reading him his Miranda rights, and then terminating the interrogation in the absence of a clear waiver. Maj. Op. at 893. The majority likewise believes that, in the brief exchange before Sessoms was read his Miranda rights, the detective manipulated Sessoms into waiving his right to counsel. Again, however, Sessoms is not claiming that he was pressured into an involuntary waiver, but only that he asked for counsel, which should have terminated the interrogation. “[T]he likelihood that a suspect would wish counsel to be present is not the test for applicability of Edwards.” McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Unless Sessoms clearly invoked his right to counsel, the police officers were not required to take any particular course of action in response to his statements or questions. See Davis, 512 U.S. at 460, 114 S.Ct. 2350. As such, the majority’s focus on the detective’s reaction to Sessoms’s statements is misplaced.
While the majority correctly observes that the state court should have considered Sessoms’s statements together rather than in isolation, that is not a basis for granting habeas relief where, as here, the state court could have reached the same outcome even if it had done so. See Harrington, 131 S.Ct. at 786 (“[A] habeas court must determine what arguments or theories supported or ... could have supported!] the state court’s decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.”). Although the majority may offer the most logical interpretation of what Sessoms was attempting to communicate by his statements, there are other interpretations that are at least reasonable, even if less compelling.[2] Even taking Sessoms’s statements together, those statements contained just enough ambiguity that a fairminded jurist could conclude that Sessoms was indicating only that he might want the assistance of counsel.
I acknowledge that this reasoning results in a harsh outcome for a nineteen-year-old who turned himself in, expressly told the officers that his father wanted him to have a lawyer, and may have simply *904 been trying to be respectful when asking for counsel. However, the potential for a harsh outcome does not permit us to disregard AEDPA’s “highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.” Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (quoting Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam)).
Could the police officers have assumed that Sessoms was in fact asking for a lawyer? Yes. Was it objectively unreasonable for the California Court of Appeal to hold that a police officer could have interpreted Sessoms’s statement as merely a possible request for a lawyer, which would not require the officer to stop the interrogation? I cannot say that it was. Because this court is constrained by the deference mandated by AEDPA, even when faced with a close case in which it may have ruled differently than the state court, I respectfully dissent.

. Justice Alito added the following footnote: The dissent suggests that officials in this case had no "special need to know whether the defendant sought to rely on the protections of the Fifth Amendment.” Post, at 2186-2187 (opinion of BREYER, J.). But we have never said that the government must demonstrate such a need on a case-by-case basis for the invocation requirement to apply. Any such rule would require judicial hypothesizing about the probable strategic choices of prosecutors, who often use immunity to compel testimony from witnesses who invoke the Fifth Amendment.
133 S.Ct. at 2183 n. 4. The majority appears to succumb to "judicial hypothesizing.”

. It might further be noted that as a practical matter, a suspect may, on occasion, benefit from waiving his Miranda rights in exchange for immunity or a bargained sentence. This reality supports the requirement that a request for counsel be unambiguous because a defendant may mention his Fifth Amendment rights as a negotiating tactic.

. The majority's distinction between a determination of fact and the application of clearly established Federal law is less than clear. It notes that the California Court of Appeal identified "the governing Supreme Court precedents, Miranda, Edwards and Davis,” but then opines that the court "unreasonably applied those precedents by analyzing Sessoms's statements in isolation rather than collectively and'in context.” Maj. Op. at 892. This suggests that where, as here, the underlying facts are not disputed, a determination of whether a suspect's statement concerning counsel is ambiguous is a question of law, not fact. This does not seem right.

. Such a test was implicitly rejected in cases such as Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) ("Maybe I should talk to a lawyer.”); and United States v. Younger, 398 F.3d 1179, 1187 (9th Cir.2005) ("[B]ut, excuse me, if I am right, I can have a lawyer present through all this, right?”). In both instances, the officers probably understood the intent behind the defendants' ambiguous statements.

. As the majority correctly observes, although the Supreme Court's holding in Davis applied only to waivers of the right to counsel made after a suspect had been informed of and waived his Miranda rights, Salinas v. Texas, - U.S. -, 133 S.Ct 2174, 186 L.Ed.2d 376 (2013), suggests that the "unambiguous request” rule applies in a pre-waiver context as well.

. The majority’s characterization of this assessment as "jettisonfing] the only 'logical interpretation’ of Sessoms's statements,” Maj. Op. at 894, misapprehends the structure that AEDPA imposes on our inquiry. We do not seek to identify the best interpretation of Sessoms’s statements. Our task is to identify the universe of reasonable interpretations. Here, if the state court's understanding of Sessoms’s statements can meet the extremely low bar that the Supreme Court has set for reasonableness, then we are precluded from granting relief.